JOANN PFLUG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pflug v. Commissioner
Docket No. 29852-87
United States Tax Court
T.C. Memo 1989-615; 1989 Tax Ct. Memo LEXIS 615; 58 T.C.M. (CCH) 685; T.C.M. (RIA) 89615; November 14, 1989
Jeanne Lawson, for the petitioner. Jeffrey A. Sherman, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax for taxable year 1982 as follows: Additions to Tax
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
$ 26,841.00
$ 7,395.75
$ 1,488.80 *
After concessions, the only issues remaining for decision are: (1) whether the income petitioner received from Charwool Productions, Inc. is subject to the self-employment income tax imposed by section 1401 et seq.; and *617 (2) whether petitioner is subject to the addition to tax under section 6651(a)(1) for a failure to timely file and pay tax. We hold petitioner was an employee of Charwool Productions, Inc. and, therefore, is not subject to the self-employment tax imposed by section 1401 et seq. We also hold petitioner is subject to the addition to tax under section 6651(a)(1). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated by reference. Petitioner, JoAnn Pflug, resided in Palm Beach, Florida, at the time the petition in this case was filed. In 1975, petitioner's husband at that time, Charles Woolery (Woolery), formed his wholly-owned production company, Charwool Productions, Inc. (Charwool). Woolery is president of, and is employed as a game-show host through, Charwool. Petitioner was, from Charwool's formation until June 1982, a vice-president of Charwool. Petitioner has never held an ownership interest in Charwool. In her role as vice-president, petitioner attended corporate officer meetings to discuss the business of Charwool. In addition, petitioner was active as Charwool's vice-president in attempting *618 to find productions in which she could perform. Petitioner is an actress. After formation of Charwool petitioner contracted with Charwool to perform her services as an actress exclusively as an employee of Charwool. From 1975 until June 1982, all contracts entered into for petitioner's acting services were entered between Charwool, as petitioner's employer, and the producer of the advertisement or television series in which petitioner was to act. In accordance with those contracts, the producers utilizing petitioner's services paid to Charwool all remuneration for those services. For example, during 1981 petitioner performed in the television series "Fall Guy" produced by 20th Century Fox Studios (Fox). A contract was entered between Fox and Charwool. Under that agreement, Fox paid Charwool for petitioner's services. Charwool was considered by all parties to the agreement to be petitioner's employer. Accordingly, Fox did not pay or withhold any employment taxes with respect to the remuneration paid. Charwool accepted responsibility for and paid employment taxes with respect to the amount of salary Charwool ultimately paid petitioner during 1981. Charwool engaged the services *619 of John Mucci and Associates, Inc. (Mucci Inc.) during 1976 through 1982 to perform bookkeeping and accounting services for Charwool. Specifically, an employee of Mucci Inc., Bruce Weber (Weber), was Charwool's business manager responsible for accounting for any employment taxes withheld and paid during that period. Charwool reported the remuneration paid to it for petitioner's services as income on its corporate Federal income tax return. Some of the money Charwool received was used to pay the business expenses incurred in connection with the performance of petitioner's service -- e.g., food, lodging, etc. -- and Charwool deducted such expenses. In addition, Charwool also made occasional cash advances to petitioner, and paid certain personal living expenses incurred by her. The amount of cash advances and personal living expenses paid by Charwool to or on behalf of petitioner was deducted by Charwool as wage expenses during 1975 through 1982. From 1975 through 1981, Mucci Inc. maintained for Charwool a drawing account in petitioner's name which was credited with the amount of any personal expenses paid on her behalf and any cash advances made to petitioner. At Charwool's fiscal *620 year end on August 31 of each of those years, Weber treated the balance of petitioner's drawing account as the amount of salary paid to petitioner during those years. Based upon the amount of that salary, Weber would calculate, withhold, and pay the appropriate employment taxes. Again, Weber used this method to compute petitioner's salary for the periods 1975 through 1981. For those years, Weber considered petitioner to be an employee of Charwool because of her agreement to act exclusively as an employee of Charwool, and her position as an officer of the corporation. However, in 1982, the year at issue, petitioner and Woolery experienced marital difficulties. In January 1982 petitioner and Woolery separated. In June of that year petitioner severed her relationship with Charwool. At Charwool's fiscal year end, August 31, 1982, Weber again computed the amount of petitioner's salary. For that year, however, petitioner's salary was not based upon the amount of cash advanced and personal living expenses paid by Charwool, as it had been for 1975 through 1981. Rather, Weber computed petitioner's income to be a percentage of Charwool's net income. That is, Weber allocated Charwool's *621 income between petitioner and Woolery based upon the relationship the income generated by each of them, respectively, bore to Charwool's gross income. Using that allocation, Weber determined petitioner had income from Charwool in the amount of $ 110,200 during 1982. Weber determined petitioner was not an employee of Charwool as of August 31, 1982. Based upon petitioner's position as of that date, Weber also determined, of the remuneration paid by Charwool to or on the behalf of petitioner throughout 1982, none of it could be considered wages from employment. That is, Weber characterized petitioner's remuneration for all of 1982 based upon petitioner's position with respect to Charwool on the specific day August 31, 1982, rather than upon petitioner's position as the remuneration was earned or paid. Weber did this mainly because Charwool did not have the funds necessary to pay the employment taxes attendant upon the amounts Charwool alleged were income to petitioner. Weber concluded petitioner had received income from Charwool as an independent contractor during 1982 and issued to petitioner a Form 1099, Statement of Miscellaneous Income, rather than a Form W-2, *622 Wage and Tax Statement, for that year. The Form 1099 issued to petitioner by Charwool for 1982 reported petitioner had received from Charwool income in the amount of $ 110,200. Although the amount computed as income for petitioner was reported on a Form 1099, the amount of income likewise computed for Woolery was reported on a Form W-2. Petitioner also employed Mucci Inc., in her individual capacity, to perform the accounting of her personal finances. When preparing to file her 1982 Federal income tax return, petitioner had in her possession a cash receipts and disbursements journal (cash journal) which Mucci Inc. prepared for 1982 with respect to petitioner's personal finances. Petitioner also had the Form 1099 issued by Charwool with respect to 1982. Petitioner provided both the cash journal and the Form 1099 to her accountant, Alejando Yemenidjian (Yemenidjian), for use in the preparation of her return. Petitioner and Yemenidjian both disagreed with the amount reported on the Form 1099 and the characterization of the income as being other than wages to an employee. For that reason, petitioner and Yemenidjian attempted to obtain from Weber and Mucci Inc. an explanation for *623 Charwool's issuance of the Form 1099 instead of a Form W-2. Weber did not provide an explanation satisfactory to Yemenidjian, however. Therefore, Yemenidjian advised petitioner to file with respondent a Form 4868, Application for Automatic Extension to File U.S. Income Tax Return, so Charwool would have an opportunity to correct its error and petitioner could comply with her filing requirements. Petitioner believed Charwool would correct its mistake and would issue to petitioner a Form W-2 in lieu of the Form 1099, which Form W-2 would reflect a substantially lower amount of income for petitioner. Upon that belief, Yemenidjian filed on petitioner's behalf a Form 4868 with respect to petitioner's 1982 tax return. Petitioner estimated on the Form 4868 that she owed zero income taxes -- and, therefore, zero self-employment taxes -- for 1982. These estimates were based upon petitioner's and Yemenidjian's interpretation of her cash journal, and upon petitioner's and Yemenidjian's belief that petitioner was an employee of Charwool. After filing the Form 4868, petitioner and Yemenidjian contacted Weber to again attempt to resolve the dispute concerning the amount of petitioner's *624 income and whether the income was from wages or self-employment. A resolution of those issues had not been reached by the time the extension purportedly provided by the Form 4868 expired. Petitioner still believed all remuneration from Charwool was to her as an employee and not subject to self-employment tax. Further, petitioner believed the amount reported as income for her on the Form 1099 was greatly exaggerated. Petitioner filed her 1982 Federal income tax return on August 12, 1983 -- a timely filing if petitioner's request for extension is valid. On the return petitioner reported receiving income from Charwool in the amount of $ 34,600. This amount was based upon the information contained in petitioner's cash journal. On the return petitioner characterized her income from Charwool as being subject to self-employment taxes in the amount of $ 2,935.00. Based upon the return filed by petitioner respondent assessed an addition to tax under section 6651(a)(1) in the amount of $ 685.00. Petitioner paid this amount to respondent during 1983. Subsequently, in June 1987, respondent issued a notice of deficiency determining petitioner received from Charwool during 1982 $ 110,200 *625 of self-employment income, and petitioner was subject to the additions to tax provided by section 6651(a)(1) and section 6653(a)(1) and (2) with respect to the amount of income not previously reported. The parties now agree the correct amount of income petitioner received from Charwool was $ 80,000, $ 45,400 of which was not previously reported by petitioner. The parties disagree, however, whether petitioner made a proper estimate of her income tax liability when filing her Form 4868 request for extension. Accordingly, the parties disagree whether petitioner's request for extension can be relied upon by her for purposes of determining whether she satisfied the filing requirements for 1982, and for purposes of absolving her of the section 6651(a)(1) failure to file addition to tax. OPINION The first issue for decision is whether petitioner is subject to self-employment taxes on the income she received from Charwool during 1982. Petitioner bears the burden on this and all issues before us. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142. Section 1401 et seq., imposes self-employment taxes on a taxpayer's self-employment income. In general, "self-employment *626 income" is defined as "the net earnings derived by an individual * * * from a trade or business carried on by him as sole proprietor or by a partnership of which he is a member * * *." Sec. 1.1401-1(c), Income Tax Regs. "[T]he performance of service by an individual as an employee, as defined in the Federal Insurance Contributions Act (chapter 21 of the Internal Revenue Code) [(FICA)] does not constitute a trade or business within the meaning of section 1402(c) and [section] 1.1402(c)-1 [Income Tax Regs.]." Sec. 1.1402(c)-3(a), Income Tax Regs.
Section 3121(d)(2) provides that the term "employee" includes "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." Under the usual common law rules, all facts and circumstances surrounding the relationship under examination are considered. Sec. 31.3121(d)-1(c)(3), Employment Tax Regs.
Generally such relationship [of employer and employee] exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also *627 as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct and control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. * * * In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. * * * [Sec. 31.3121(d)-1(c)(2), Employment Tax Regs.] Under the facts of this case, we find petitioner was an employee of Charwool during 1982 pursuant to the common law rules expressed above. The fundamental question is whether Charwool had the right to exercise dominion and control over the activities of petitioner, not only as to results but also as to the means and methods used to accomplish the result. We find, by virtue of the contract petitioner entered *628 with Charwool, Charwool had the requisite right to control petitioner. Respondent asserts petitioner has not satisfied her burden of proof with respect to Charwool's right to exercise control over petitioner because petitioner has failed to produce a copy of the contract by which she alleges she agreed to act exclusively through Charwool. We do not attach any significance to the failure to produce that contract, however, because of Woolery's and Mucci Inc.'s retention of Charwool's business records, and because of petitioner's strained relationship with Woolery. Petitioner's credible testimony was that she agreed to act exclusively through Charwool. Petitioner's testimony, besides being veracious, is corroborated by her actions, and those of her husband, Charwool, and Weber, for the six preceding years. It is further relevant that, as to those preceding years, respondent did not challenge Charwool's and petitioner's characterization of petitioner as an employee. From the record of this case, we are satisfied petitioner was the employee of Charwool during her affiliation with that corporation in 1982. The next issue for decision is whether petitioner is subject to the addition *629 to tax under section 6651(a)(1). That section provides an addition to tax for a failure to timely file a Federal income tax return. Whether a return is filed timely is determined with regard to any extensions of the time for filing previously granted. Petitioner argues that, by virtue of her filing a Form 4868, she was granted an automatic four-month extension of time within which to file her Federal income tax return originally due April 15, 1983. Petitioner asserts her return for 1982 was not due to be filed until August 15, 1983. Because petitioner filed her return on August 12, 1983, she asserts she filed her return timely and is not subject to the section 6651(a)(1) addition to tax. Respondent asserts petitioner did not comply with the requirements imposed for the granting of an automatic extension of time to file. For that reason, respondent asserts, petitioner's request for extension was void ab initio, and petitioner did not receive an extension and did not file on time. Thus, respondent argues, petitioner is subject to the addition to tax under section 6651(a)(1). A proper application for an automatic extension of time to file: must show the full amount properly *630 estimated as tax for such taxpayer for such taxable year, and such application must be accompanied by the full remittance of the amount properly estimated as tax which is unpaid as of the date prescribed for the filing of the return. [sec. 1.6081-4(a)(4), Income Tax Regs.] When petitioner filed her Form 4868, Application for Automatic Extension to File U.S. Income Tax Return, her estimate of income taxes due was based upon the information contained in her cash journal. Although the cash journal had been previously maintained by Mucci Inc., petitioner and her accountant, Yemenidjian, should have been aware the cash journal reflected only cash payments made by Charwool to petitioner and did not reflect payments made by Charwool on petitioner's behalf. Petitioner knew her income from Charwool took the form of direct payments of cash, and payments of expenses on her behalf. Petitioner's failure to include, on her Form 4868, a bona fide and reasonable estimate of her income and resulting tax liability from indirect payments by Charwool was improper. See Crocker v. Commissioner, 92 T.C. 899 (1989). Accordingly, petitioner did not comply with the requirements of the *631 above-referenced regulation. Petitioner's failure subjects her to the section 6651(a)(1) addition to tax as determined by respondent. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. * Fifty percent of the interest due on the deficiency.↩