T.C. Memo. 1996-46

UNITED STATES TAX COURT

MARVIN W. AND KATHRYN A. MCPIKE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16752-87.          Filed February 12, 1996.

Marvin W. and Kathryn A. McPike, pro se.

<u>Debra Bowe</u>, for respondent.

MEMORANDUM FINDINGS of FACT and OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge Larry L. Nameroff pursuant to section 7443A(b)(4) and Rules
180, 181, and 183.[1]  The Court agrees with and adopts the opinion

---

[1]    All section references are to the Internal Revenue Code
in effect for the years in issue.  All Rule references are to the
Tax Court Rules of Practice and Procedure.

of the Special Trial Judge, which is set forth below.

## OPINION OF THE SPECIAL TRIAL JUDGE

NAMEROFF, <u>Special Trial Judge</u>:  Respondent determined deficiencies, additions to tax, and increased interest as follows:

|  |  | Additions to Tax and Increased Interest | | | | |
|  |  | Sec. | Sec. | Sec. | Sec. | Sec. |
| <u>Year</u> | <u>Deficiency</u> | <u>6653(a)(1)</u> | <u>6653(a)(2)</u> | <u>6651(a)(1)</u> | <u>6661(a)</u> | <u>6621(c)</u> |
| 1980 | $ 8,689 | [1]$434.45 | --- | --- | --- | [2] |
| 1981 | 11,311 | 565.55 | [3] | --- | --- | [2] |
| 1983 | 9,258 | 462.90 | [3] | --- | $2,314.50 | [2] |
| 1984 | 14,139 | 960.80 | [3] | $3,534.75 | 3,534.75 | [2] |

[1]  The Code section for 1980 is 6653(a).

[2]  Interest on the entire deficiency to be computed at 120 percent of the standard underpayment rate.

[3]  50 percent of the interest due on the deficiency.

Initially, in the notice of deficiency, respondent determined adjustments to petitioners' income by disallowing their claims to losses with respect to the Winthrop Trust and their claims to distributive shares of partnership losses of the Kathmar Company in which petitioners are the two general partners, each having a 50-percent interest.  In a Stipulation of Settlement filed with the Court on January 9, 1995, the parties settled all issues pertaining to the Winthrop Trust. Specifically, the parties agreed that petitioners are allowed ordinary losses of $8,506 for 1983 and $6,441 for 1984 attributable to the Winthrop Trust.  With respect to the additions to tax and increased interest the parties agreed as follows:

*       *       *       *       *       *       *

4.  No amount of the deficiencies in income taxes resulting from disallowed deductions and credits attributable to Winthrop Trust due from petitioners for the 1983 and 1984 taxable years are attributable to tax-motivated transactions for the purpose of computing the addition to tax payable pursuant to I.R.C. section 6621(c).

5.  The addition to tax for negligence pursuant to I.R.C. sections 6653(a)(1) and (2) shall not be applicable to the 1983 and 1984 taxable years for any deficiency in income taxes resulting from disallowed deductions and credits attributable to Winthrop Trust.

6.  The addition to tax for delinquency pursuant to I.R.C. section 6651 shall be applicable to the 1984 taxable year for any deficiency in income taxes resulting from disallowed deductions and credits attributable to Winthrop Trust.

7.  The addition to tax for substantial understatement of income tax pursuant to I.R.C. section 6661(a) shall not be applicable to the 1983 and 1984 taxable years for any deficiency in income taxes resulting from disallowed deductions and credits attributable to Winthrop Trust.

These concessions should be reflected in the Rule 155 computations.

In the Stipulation of Facts filed with the Court on February 3, 1995, petitioners conceded that all losses, expenses, and investment tax credits derived from the Kathmar Company as partners thereof on their Federal income tax returns for 1983 and 1984 are not allowable.  Thus, the issues remaining for decision, pertaining only to the Gold Depository and Loan Company, Inc. (GD&L) container leasing tax shelter[2] through Kathmar Company, are (1) whether petitioners are liable for the additions to tax

---

[2]     A detailed discussion of the container industry and program, including GD&L, can be found in Weiler v. Commissioner, T.C. Memo. 1990-562.

for negligence or intentional disregard of the rules or regulations; (2) whether petitioners are liable for the 1984 addition to tax under section 6651(a)(1); (3) whether petitioners are liable for the additions to tax for substantial understatement of income tax for 1983 and 1984 under section 6661(a); and (4) whether petitioners are liable for an increased rate of interest on deficiencies attributable to tax motivated transactions under section 6621(c).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners resided in San Bernardino, California, when their petition was filed in this case.

Marvin McPike (petitioner) is a retired fire fighter. He was employed for 28 years as a fireman in San Bernardino and 4 years in Colton. He has a high school education. Since graduating from high school, petitioner received no further formal education, except for a few courses in fire science. Petitioner has no previous investment experience other than investing in his personal residence.

Kathryn McPike (Mrs. McPike) completed the ninth grade in school. During the years before the Court she was employed as office manager and general clerk for the United Food and Commercial Workers Union. Her responsibilities included typing,

filing, answering telephones, and general office work. She is now retired. Mrs. McPike has no previous investment experience other than her personal residence.

Prior to 1982, petitioners either prepared their own tax returns or hired someone to prepare them. They did not have a regular return preparer. In 1982, petitioners saw an advertisement in a local newspaper for tax return preparation by Daniel Lukensow (Lukensow). According to the advertisement, Lukensow's background consisted of 7 years as an internal revenue agent and 8 years of private practice in the areas of tax law, tax return preparation, and tax audits. Petitioners contacted Lukensow, made an appointment, and hired him to be their tax return preparer. They never investigated Lukensow's background.

Lukensow advised petitioners that they could save a considerable amount of money through investment in tax shelters. He promoted and sold two different tax shelters, one involving a computer rental program and the other involving a marine dry cargo container program. Petitioner discussed these programs with Lukensow, but Mrs. McPike was not involved. She relied on petitioner to make the decisions regarding investments. Petitioner believed that the proposed investments would reduce their Federal income tax liability, allow them to provide better financial assistance to their blind son, and generate a pension after their retirement.

In 1983, petitioners invested in the container leasing

program promoted by Lukensow and offered by GD&L. Lukensow

provided petitioner with promotional materials for the container

leasing program. These materials included a question and answer

memorandum regarding the program, a favorable letter from an

attorney, and a prospectus of the container leasing program.

Petitioner reviewed and relied on these documents. Although

petitioner did not completely understand the documents, his basic

understanding of these materials was that an investment in the

program would substantially reduce his Federal income tax

liability.

Petitioner relied on the following passages from the

question and answer memorandum:

Q. Aren't container leasing tax shelters an industry-
wide scam?

A. Yes, we too have heard of such schemes. The only
answer to that is that we have been and are now
honorable and legitimate and plan to be around for a
long time. It is not the form of the investment that
is important - it is the expertise that goes into
making it successful. All scams will mimic legitimate
projects and are actually trading on the good name of
the ones that have achieved success.

    *    *    *    *    *    *    *
Q. How do we know that your firm can, and will, do
what you say?

A. * * * Our chief counsel, Alex Laurins, is an
attorney, formerly with the IRS and with years of
experience in the tax field. Our staff of attorneys
has reviewed this program at every step and is now
exercising the same meticulous preparatory work on our
forthcoming mining tax shelter. * * *

In addition to this excerpt, petitioner relied on the

favorable letter from an attorney, Alois E. Lemke. This letter stated that investors in the container leasing program would be able to qualify for tax credits and depreciation write-offs. Petitioners did not contact another attorney, accountant, or any other individual to verify this information.

Lukensow set up a partnership called Kathmar Company in which petitioners each held a 50-percent interest. Through Kathmar, petitioners invested in GD&L's container leasing program. Petitioners did not understand the nature or purpose of the partnership, and Lukensow did not explain its function or operation due to its alleged complexity.

On August 16, 1983, petitioners purchased 20 units[3] of containers for $200,000.[4] The terms of the purchase required a downpayment of $9,900, and GD&L purportedly arranged the financing for the remaining $190,100, for which petitioner signed promissory notes. As part of the agreement, petitioners agreed to appoint GD&L as their non-exclusive agent for the purposes of leasing the containers. GD&L agreed to act as the leasing agent for petitioners for 35 months and to use its best efforts to

---

[3]     According to the Container Purchase and Lease Agreement, each unit represented one 40-foot container "valued at" $4,000 and three 20-foot containers "valued at" $2,000.

[4]     Most of the documentation contained in the stipulation of facts reflects only the purchase of 10 units, while the 1983 tax return reflects a total cost of $200,000. Moreover, the amount of the investment tax credit (ITC) claimed therein, carried back to 1980 and 1981, and at issue herein, is based upon a $200,000 alleged cost.

lease the containers. Pursuant to this agreement, GD&L was to receive an annual lease management fee of $1 plus 15 percent of the revenues generated by leasing petitioners' containers. Petitioner does not recall making any payments on the promissory notes nor for any management fees.

Petitioners received income and expense statements related to their container leasing investment. Because petitioners did not understand the documents, they took them to Lukensow for use in the preparation of their tax returns.

On the Schedule E attached to their 1983 Federal income tax return, petitioners reported ordinary losses of $33,758 from Kathmar. On Form 3468 petitioners computed an ITC in the amount of $20,000. Petitioners carried this $20,000 credit back to taxable years 1980 and 1981 for refunds in the amounts of $8,698 and $11,311, respectively.

Based on Lukensow's advice, petitioners filed Form 4868, Application for Automatic Extension of Time, on April 12, 1985, for an automatic extension until August 15, 1985, to file their 1984 Federal income tax return. Petitioners gave Lukensow all their tax papers, and he prepared the Form 4868. On that form, petitioners estimated their 1984 Federal income tax liability to be $5,077, of which $4,551 had been withheld by Mrs. McPike's employer and a life insurance company. Petitioners filed Form 4868 and enclosed a check in the amount of $526. Thereafter, they sent by certified mail their 1984 Federal income tax return

to the Internal Revenue Service Center in Fresno, California. The envelope containing petitioners' 1984 tax return was postmarked August 13, 1985. The tax return was stamped "received" by the Internal Revenue Service on August 19, 1985.

On the Schedule E attached to their 1984 Federal income tax return, petitioners reported ordinary losses of $23,484 related to the container leasing investment. In the notice of deficiency respondent disallowed all losses claimed by petitioners regarding Kathmar for 1983 and 1984, as well as all claimed ITC.

Petitioners are currently part of a pending class action lawsuit against the promoters of GD&L. The primary claim of the lawsuit is that the promotion was fraudulent and a sham.

OPINION

Petitioners contend that they reasonably relied on Lukensow and the promotional materials when they invested in and claimed deductions and credits attributable to the GD&L container leasing program. Therefore, they assert that they are not liable for the additions to tax and increased interest related thereto. To the contrary, respondent contends that petitioners are liable for the additions to tax pursuant to section 6653(a)(1) and (2), section 6661(a), and section 6651(a), and the increased interest pursuant to section 6621(c).

Section 6653(a) Additions to Tax for Negligence

Section 6653(a) for 1980 and section 6653(a)(1) for 1981, 1983, and 1984 impose an addition to tax equal to 5 percent of

the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(2) for 1981, 1983, and 1984 imposes an addition to tax in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 937 (1985). Respondent's determination that petitioners were negligent is presumed correct, and petitioners bear the burden of proving that they were not negligent. Rule 142(a).

In order to prevail on the negligence issue, petitioners must prove that their actions in connection with the GD&L container investment were reasonable in light of their experience and the nature of the investment. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973). Within this framework, petitioners may prevail if they reasonably relied on competent professional advice. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). When considering the negligence addition to tax we evaluate the particular facts of each case, judging the relative sophistication of the taxpayers, as well as the manner in which they approached their investment. Maminga v. Commissioner, T.C. Memo. 1995-361.

Based on this record, we conclude that petitioners' reliance

on the alleged expertise of Lukensow and the promotional materials was not reasonable or prudent.  Pasternak v. Commissioner, 990 F.2d 893, 902-903 (6th Cir. 1993), affg. Donahue v. Commissioner, T.C. Memo. 1991-181; Klieger v. Commissioner, T.C. Memo. 1992-734.  Without any previous investment experience, petitioners agreed to purchase $200,000 worth of assets and incur debt of $190,100 solely upon the representations and promotional materials presented by Lukensow, an individual they discovered in a newspaper advertisement. Petitioners relied solely on Lukensow's representations as to his expertise without any further research.  They also relied on his representations and the promotional material as to the legitimacy of the container investment, without any further investigation, although Lukensow, as a promoter, earned fees from the sale of the container leasing program.  Petitioners proceeded to invest cash of nearly $10,000 and purported to incur liability for approximately $190,100, hoping to save taxes at virtually no cost to themselves, due to the refunds from the ITC carryback claims.[5]

It is clear that petitioners were sheltering income improperly with large deductions and small cash investments.  For

---

[5]    Prior to the filing of their 1983 return, petitioners had undergone an audit of their 1980 and 1981 income tax returns in connection with an investment in the Universal Life Church and had been assessed substantial deficiencies, interest, and additions to tax in connection therewith.

example, in 1983 they used GD&L losses of $33,758 to offset gross income of $53,422, and in 1984 they used GD&L losses of $23,484 to offset gross income of $75,664.  The substantial losses that GD&L generated for 2 consecutive years should have concerned even unsophisticated investors.  Although petitioners may not have fully understood their GD&L investment and may not have known all the "gremlins" that were present in the investment, it would seem that they should have inquired.  See Maminga v. Commissioner, T.C. Memo. 1995-361; Sacks v. Commissioner, T.C. Memo. 1994-217.

We have considered Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, in our evaluation of this case.  In Heasley, the taxpayers were not educated beyond high school and had limited investment experience.  The taxpayers in Heasley relied upon the advice of an independent accountant who apparently did not receive a commission from the sale of the tax shelter in which the taxpayers invested.  Further, the taxpayers actively monitored their investment and intended to profit from the investment.

We cannot reach similar conclusions in the instant case. Although petitioners have educational backgrounds similar to the taxpayers in Heasley, they did not have an accountant or any other individual independently review the container investment. Instead, they relied only on the advice of Lukensow and the promotional materials.  Moreover, petitioners made no effort to monitor their investment, and they have failed to establish that

they intended to profit from their investment.[6]  Thus, we do not find Heasley controlling in the instant case.

Accordingly, we sustain respondent's determination with respect to the additions to tax for negligence insofar as it pertains to the GD&L container leasing investment.[7]

Section 6651(a)(1) Addition to Tax for Delinquency

Section 6651(a)(1) imposes an addition to tax for failure to file a tax return or pay any tax by the applicable due date, unless it is shown that such failure is due to reasonable cause and not willful neglect.  United States v. Boyle, 469 U.S. 241, 246 (1985).  Petitioners bear the burden of proving that their failure to file a timely return was due to reasonable cause and not willful neglect.  Neubecker v. Commissioner, 65 T.C. 577, 586 (1975).

Generally, individuals who compute their taxes on a calendar year basis must file their Federal income tax return by the 15th day of April following the close of the taxable year.  Sec.

---

[6]    There is ample evidence to suggest that petitioners invested in the container leasing program primarily to reduce their Federal tax liability.  Petitioner's testimony emphasized his desire to reduce their income tax liability through investments.  In addition, his review of the promotional materials focused on the tax benefits which could be obtained by investing in the container program.  Although Mrs. McPike suggested that petitioners had a profit motive, we think that petitioners invested in the container program for its tax benefits, and any profit motive was incidental.

[7]    We emphasize again that, in our judgment, respondent has conceded there is no negligence with respect to the claimed losses of the Winthrop Trust, and this should be reflected in the Rule 155 computations.

6072(a).  Nevertheless, individual taxpayers may obtain an automatic 4-month extension of time to file their return.  Sec. 1.6081-4(a)(1), Income Tax Regs.  In order to obtain the automatic extension, a taxpayer must file a signed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return.  Sec. 1.6081-4(a)(2), Income Tax Regs.  The application must be filed with the appropriate internal revenue officer on or before the due date prescribed for filing the taxpayer's return.  Sec. 1.6081-4(a)(3), Income Tax Regs.  Sec. 1.6081-4(a)(4), Income Tax Regs., provides that the application:

> must show the full amount properly estimated as tax for such taxpayer for such taxable year, and such application must be accompanied by the full remittance of the amount properly estimated as tax which is unpaid as of the date prescribed for the filing of the return. [Emphasis added.]

Respondent concedes that petitioners' 1984 Federal income tax return was timely postmarked and therefore timely filed if the extension request was valid.  Sec. 7502(a).  However, it is respondent's position that because petitioners failed to properly estimate their tax liability, their extension request was invalid, and the extension received was void ab initio.  The Commissioner may properly void automatic extensions of filing deadlines previously obtained where the taxpayer's Form 4868 is invalid because of a failure to estimate properly tax liability.  Crocker v. Commissioner, 92 T.C. 899, 911 (1989).  Nevertheless, the mere fact that petitioners underestimated their income tax

liability is insufficient to conclude that the estimate was improper. Id. at 906.

A taxpayer is treated as having "properly estimated" his tax liability, within the meaning of section 1.6081-4(a)(4), Income Tax Regs., when he makes a bona fide and reasonable estimate of his tax liability based on the information available to him at the time he makes his request for an extension. Crocker v. Commissioner, supra at 908. Petitioners estimated their tax liability to be $5,077 at the time they filed their extension request. Their 1984 Federal income tax return reported an income tax liability in the same amount. Ultimately, after the issuance of the notice of deficiency and disallowance of credits and deductions reported on the 1984 Federal income tax return, petitioners' true income tax liability was determined to be $16,510.

Petitioners argue that the Form 4868 was prepared by Lukensow and that they paid the amount of tax they believed to be due for 1984. It is the taxpayer's obligation to supply his accountant with complete and accurate records from which to make a reasonable estimate of tax liability. Estate of Duttenhofer v. Commissioner, 49 T.C. 200, 205 (1967), affd. per curiam 410 F.2d 302 (6th Cir. 1969). Petitioners located, gathered, and supplied all of their 1984 income tax information to Lukensow.

In the previous section of this opinion, we held that petitioners were negligent in claiming deductions and investment

tax credits arising out of the  GD&L container leasing program and that they did not reasonably rely upon the advice of a competent adviser.  It follows that petitioners did not make a bona fide and reasonable estimate of their tax liabilities by relying on that same adviser, who utilized the GD&L deductions and credits in estimating their 1984 Federal tax liability for purposes of obtaining a filing extension.  Thus, we conclude that petitioners did not properly estimate their 1984 tax liability, the extension request was not valid, and the 1984 return was not timely filed.  Therefore, we hold that petitioners are liable for the 1984 addition to tax for delinquency under section 6651(a)(1).[8]

Section 6661(a) Addition to Tax

Section 6661(a) provides for an addition to tax equal to 25 percent of an underpayment attributable to a substantial understatement of tax.  Section 6661(b)(1)(A) defines a substantial understatement as the greater of 10 percent of the tax required to be shown or $5,000.  The amount of the understatement may be reduced by an amount for which there was substantial authority for the treatment adopted by the taxpayers on their return.  Sec. 6661(b)(2)(B)(i).  This reduction is not available in the case of a tax shelter unless, in addition, the

---

[8]     This addition to tax applies to the entire deficiency for 1984,  Indeed petitioners have conceded that it applies to the portion of the deficiency in income taxes resulting from the disallowance of deductions and credits attributable to the Winthrop Trust.

taxpayers reasonably believed that the claimed tax treatment was "more likely than not" the proper tax treatment. Sec. 6661(b)(2)(C)(i)(II). For this purpose, section 6661(b)(2)(C)(ii) defines a tax shelter as any partnership or other entity or investment plan or arrangement the principal purpose of which is the avoidance or evasion of Federal income tax.

Section 6661(c) authorizes respondent to waive any part of the addition to tax imposed under section 6661(a) upon a showing by the taxpayers of reasonable cause for the understatement and that the taxpayers acted in good faith. The most important factor in determining whether to grant a waiver is "the extent of the taxpayer's effort to assess the taxpayers' proper tax liability under the law." Sec. 1.6661-6(b), Income Tax Regs.; Mailman v. Commissioner, 91 T.C. 1079, 1083-1084 (1988). Reliance upon the advice of a professional will not constitute a showing of reasonable cause and good faith unless, under all the circumstances, such reliance was reasonable in light of the taxpayers' experience, knowledge, and education. Sec. 1.6661-6(b), Income Tax Regs. Thus, if it was reasonable for the taxpayers to rely on their financial adviser or accountant under the circumstances, and the taxpayers did so in good faith, then the Commissioner may waive the penalty. Vorsheck v. Commissioner, 933 F.2d 757 (9th Cir. 1991), affg. in part and revg. in part an Oral Opinion of this Court.

As previously discussed, petitioners' efforts to assess their proper income tax liability consisted of their reliance upon the promotional materials and their discussions with Lukensow.  It is clear that they did not make the kind of factual or legal analysis of the GD&L container leasing program that would enable them to formulate any reasonable belief one way or another as to whether the tax treatment they gave to their claimed deductions and ITC was more likely than not the proper treatment.  Having concluded that petitioners' reliance on Lukensow and the promotional materials was neither reasonable nor in good faith, it follows that no reduction of the understatement is available and that respondent did not abuse her discretion in declining to waive the addition to tax under section 6661(a). Accordingly, respondent's determination with respect to this issue is sustained.

Section 6621(c) Increased Rate of Interest

Section 6621(c) provides for an increased interest rate with respect to any "substantial underpayment" (greater than $1,000) in any taxable year "attributable to 1 or more tax motivated transactions".  The increased rate of interest applies as of December 31, 1984, even though the transaction was entered into prior to the enactment of the statute.  Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), affd. without published opinion 795 F.2d 1005 (2d Cir. 1986).  The term "tax motivated transaction" includes any "sham or fraudulent transaction".  Sec.

6621(c)(3)(A)(v).  The statutory language encompasses transactions which lack a profit objective and which are without economic substance.  <u>Cherin v. Commissioner</u>, 89 T.C. 986, 1000 (1987).

This Court has previously held that the container leasing program promoted by GD&L lacked economic substance and was a factual sham.  See <u>Cleland v. Commissioner</u>, T.C. Memo. 1993-589; <u>Shortal v. Commissioner</u>, T.C. Memo. 1992-560; <u>Weiler v. Commissioner</u>, T.C. Memo. 1990-562.  Petitioners introduced no evidence that the container leasing program was not an economic sham.  Accordingly, the increased rate of interest applies to the underpayment attributable to all deductions and credits taken with respect to the container program.

We have considered all arguments made by the petitioners and, to the extent not addressed herein, have found them to be without merit.

In order to reflect our disposition of the disputed issues, as well as the parties' concessions and stipulations,

<u>Decision will be entered under Rule 155</u>.