In re James **BRUSTMAN**, Debtor.

James **BRUSTMAN**, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

Bankruptcy No. SA 93–17269 JR.
Adversary No. SA 96–2241 JR.

United States Bankruptcy Court,
C.D. California.

Dec. 19, 1997.

A. Lavar Taylor, Law Offices of A. Lavar Taylor, Santa Ana, CA, for Plaintiff.

Darwin Thomas, Asst. U.S. Atty., Los Angeles, CA, for Defendant.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

### I. INTRODUCTION

Plaintiff, James Brustman ("Debtor"), reopened his chapter 7 case and commenced an adversary proceeding to determine the dischargeability of his 1989 federal income tax liability assessed against him by the Internal Revenue Service (the "IRS"). Debtor brings a motion for summary judgment (the "Motion") seeking to have the federal income tax liability discharged under Bankruptcy Code (the "Code")[1] § 727(b).

Income taxes are entitled to priority status under Code § 507(a)(8)(A)(i) if the last date for the timely filing of the return, including extensions, occurs within three years of the date of the bankruptcy petition. However, Debtor argues that the tax liability is not entitled to priority status for two reasons: (1) the three-year period set forth in that section was not extended as a result of Debtor's first bankruptcy filing, thereby causing the IRS' claim to fall outside the three-year period; and (2) even though Debtor's extension requests were granted by the IRS, the extensions were void under the Internal Revenue Code ("I.R.C.")[2] and are not valid for purposes of Code § 507(a)(7). After a hearing on September 3, 1997, I took the matter under submission.

### II. JURISDICTION

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 157(b)(1) (bankruptcy courts may hear cases arising under title 11) and 28 U.S.C. § 1334(b) (district courts shall have original but not exclusive jurisdic-

---

**1.** The Code is set forth in 11 U.S.C. §§ 101–1330 (1997).

**2.** References to Title 26, the Internal Revenue Code, shall be "I.R.C. § ___."

tion of all civil proceedings arising under title 11). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## III. STATEMENT OF FACTS

The parties stipulated to the material facts. On or about October 16, 1990, Debtor filed his 1989 federal tax return on a form 1040 (the "Return") with the IRS. The Return reflected taxable income in the amount of $176,282, including a capital gain of $123,-227 from the sale of an office building in March 1989. The total amount of income tax debt reflected on the Return, exclusive of interest and penalties, was $59,301. Prior to filing the Return, Debtor submitted two separate requests for extension of time to file the Return, and both requests were approved by the IRS. On November 19, 1990, the IRS assessed Debtor's tax debt at $59,301, and no penalty was issued under I.R.C. § 6651(a)(1) for Debtor's failure to file a timely return.

On August 5, 1992, Debtor filed a voluntary chapter 7 bankruptcy petition (the "First Case"). However, the First Case was dismissed on December 11, 1992. On July 2, 1993, Debtor filed a second voluntary chapter 7 petition (the "Second Case"), and Debtor received a discharge on November 5, 1993. The Second Case was closed on November 17, 1993 and later reopened on December 16, 1996 to determine the dischargeability of Debtor's 1989 federal income tax liability (the "1989 Taxes").

Debtor filed an adversary proceeding on January 6, 1997, and on August 13, 1997, Debtor filed the Motion to have the 1989 Taxes discharged under Code § 523(a)(1). The United States of America ("Defendant")

filed an opposition to the Motion on behalf of the IRS. After a hearing on September 3, 1997, I took the matter under submission.

## IV. DISCUSSION

In determining whether or not any genuine issues of material fact exist for summary judgment purposes, the court must view the evidence in the light most favorable to the nonmoving party. *Kowalski–Schmidt v. Forsch (In re Giordano),* 212 B.R. 617 621 (9th Cir. BAP 1997) (citing *Hansen v. United States,* 7 F.3d 137, 138 (9th Cir.1993) and *Hughes v. United States,* 953 F.2d 531, 541 (9th Cir.1992)). "The party moving for summary judgment must show by the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Fed.R.Civ.P. 56(c)).

Debtor argues that his 1989 Taxes were not excepted from discharge under Code § 523(a)(1)(A)[3] for two reasons. First, the 1989 Taxes were not entitled to priority treatment under Code § 507(a)(8)(A)(i) because the three-year period had expired prior to the Second Case and this period was not tolled by reason of the First Case. Second, the extensions granted by the IRS were invalid, thereby resulting in the expiration of the three-year period.

### A. *Noland Does Not Necessitate A Rejection Of West.*

 Addressing Debtor's first reason, the Motion raises the issue of whether the three-year period under § 507(a)(8)(A)(i)[4] can be tolled for the period of the First Case plus six months, in light of the Supreme Court's

---

**3.** Section 523 provides in relevant part:

 (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
 (1) for a tax ...
 (A) of the kind and for the periods specified in section ... 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed.
 11 U.S.C. § 523(a)(1)(A)(1994).

**4.** Section 507 states in pertinent part:

 (a) The following expenses and claims have priority in the following order:
 (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
 (A) a tax ... measured by income ... (I) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, *including extensions,* after three years before the date of the filing of the petition. (emphasis added).
 11 U.S.C. § 507 (1994).

decision in *United States v. Noland,* 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996).

Debtor contends that based on *Noland,* the three-year period for dischargeability set out in § 507(a)(8)(A)(i) cannot be tolled because of an intervening bankruptcy case. Defendant, on the other hand, maintains that the Supreme Court's decision in *Noland* does not overrule the controlling law in the Ninth Circuit that suspends the three-year period during an intervening bankruptcy case and for six months thereafter.

Prior to *Noland,* in *Brickley v. United States (In re Brickley),* 70 B.R. 113 (9th Cir. BAP 1986), the Bankruptcy Appellate Panel ("BAP") held that § 108(c)[5] in conjunction with I.R.C. § 6503(b)[6] suspended the three-year tax collection period under § 507(a)(7)(A)(i)(predecessor to § 507(a)(8)(A)(i)) while the automatic stay was in effect during a prior bankruptcy case. The BAP concluded that a literal reading of § 108(c) "would render the extension of the statute of limitations ... without meaning, since tax collectability is obviously useless if the tax debt has been discharged." *Id.* at 115. Since then, the majority of the courts that have analyzed the issue have followed *Brickley.* In fact, Defendant's position is supported by the Tenth,[7] Ninth, Eighth, Seventh, and Third Circuits.[8]

The Ninth Circuit in *West* adopted the *Brickley* rationale, noting that although generally an analysis begins with the statutory language, "rare cases" arise where a literal application of the statute will produce a result at odds with the drafters' intentions. *West,* 5 F.3d at 425. In those rare cases, the drafters' intent rather than a strict construction of the language should control. *Id.*[9] In *West,* the Ninth Circuit found that the literal interpretation of § 108(c) would defeat the Code's "intricate scheme for the payment of tax claims." *Id.* at 426. Although the Code does not contain any provisions that explicitly suspend the priority period of § 507(a)(8)(A)(i) while a debtor is engaged in bankruptcy proceedings, the Ninth Circuit reasoned that incorporating the suspension provisions of the I.R.C. would further Congress' intent to give the government "the benefit of certain time periods in which to pursue its collection efforts."[10] *Id.,* at 426

---

5. Section 108(c) suspends the statute of limitations for actions outside of bankruptcy for the pendency of current bankruptcy proceedings. Section 108(c)(1) states:

> Except as provided in section 524 of this title, if applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until ...
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case.

11 U.S.C. § 108(c)(1) (1994).

6. Section 6503(b) provides in relevant part:

> The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any state ... and for 6 months thereafter.

26 U.S.C. § 6503(b)(1994).

7. The Tenth Circuit found tolling applicable. However, it relied entirely on the general equitable powers of the bankruptcy court under Code § 105(a). *See United States v. Richards (In re Richards),* 994 F.2d 763, 766 (10th Cir.1993).

8. *See Waugh v. IRS (In re Waugh),* 109 F.3d 489, 493 (8th Cir.1997); *In re Taylor,* 81 F.3d 20, 24–25 (3rd Cir.1996); *Montoya v. United States,* 965 F.2d 554, 555–58 (7th Cir.1992).

In addition, courts have found that the analysis applied with equal force to the 240-day priority period of § 507(a)(8)(A)(ii). *In re West,* 5 F.3d 423, 427 n. 9 (9th Cir.1993), *cert. denied,* 511 U.S. 1081, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994); *see also Richards,* 994 F.2d 763.

9. The court also noted that:

> a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute: ... the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute ... and the objects and policy of the law....

*West,* 5 F.3d at 426 n. 4 (quoting *Bob Jones Univ. v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 2025–26, 76 L.Ed.2d 157 (1983)).

10. The legislative history of § 108(c) clearly demonstrates that Congress intended to activate I.R.C. § 6503 and therefore suspend the running of the statute of limitations for tax collection during a taxpayer's bankruptcy proceeding. *See Brickley,* 70 B.R. at 115.

In discussing § 108(c), the Senate Report stated:

(quoting *Richards,* 994 F.2d at 765); *see also* S.Rep. No. 95–989, 95th Cong., 2d Sess. 14 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5800.

Debtor responds that the recent Supreme Court decision in *Noland* undercuts *West.* In *Noland,* the Supreme Court held that "bankruptcy courts may not take it upon themselves to make that categorical determination [to subordinate postpetition tax penalties] under the guise of equitable subordination." *Noland,* at 541–42, 116 S.Ct. at 1528. Such a determination runs "counter to Congress's policy judgment that a postpetition tax penalty should receive the priority of an administrative expense . . . ." *Id.* at 541, 116 S.Ct. at 1527–28. Debtor asserts that when a court tolls the three-year period pending bankruptcy proceedings, it engages in "judicial legislation," which is contrary to the wishes of the Supreme Court's view as expressed in *Noland.* Based on *Noland,* Debtor argues that the majority view wrongly sought to correct what is perceived to be an unfair result for the IRS if intervening bankruptcies do not operate to suspend the running of the periods in § 507(a)(8). Debtor points out that § 507(a)(8)(A)(i) does not expressly provide for any tolling of the three-year period.[11]

Defendant responds that *Noland* does not overrule *West.* Defendant argues that although the *Noland* Court rejected the Sixth Circuit's attempt to use equitable powers to contravene a statutory command, *West* only involves an issue of statutory interpretation.

*Noland* does not necessitate a rejection of *West.*[12] In *Noland,* the IRS filed claims for taxes, interest, and penalties that accrued after debtor filed bankruptcy under chapter 11, but before the case was converted to chapter 7. Although the IRS' claims were entitled to first priority as administrative expenses under §§ 503(b)(1)(C) and 507(a)(1), the bankruptcy court "equitably subordinated"[13] the penalty claim pursuant to § 510(c).[14] The bankruptcy court found that § 510(c) gave it the authority to deal not only with inequitable government conduct, but also to adjust the statutory priority of claims. *Noland,* at 535–36, 116 S.Ct. at 1525–26. Later, in affirming the bankruptcy court's

in the case of federal liabilities, the IRC suspends the statute of limitations on a tax liability of a taxpayer from running while his assets are in the control or custody of a court and for six months thereafter (§ 6503(b) of the I.R.C.). The Amendment applies this rule in a title 11 proceeding. Accordingly, the statute of limitations on collection of nondischargeable federal tax liability of a debtor will resume running after six months following the end of the period during which the debtor's assets are in control or custody of the bankruptcy court. This rule will provide the IRS adequate time to collect nondischargeable taxes following the end of title 11 proceedings.
S.Rep. No. 95–989 at 31 (1978), *reprinted in* 1978 U.S.C.C.A .N. 5785, 5816–17.

11. Debtor argues that § 108(c) only extends the time period arising under *nonbankruptcy* law and that, therefore, it has no application to the time periods in the Code.

12. To date, only one court has addressed the issue of whether *Noland* invalidates the majority position as stated in *Brickley.* In *In re Nolan,* 205 B.R. 885 (Bankr.M.D.Tenn.1997), the bankruptcy court considered *Noland* and refused to toll the three-year "look back" period of § 507(a)(8)(A)(i). The court found that

[e]quitable tolling or extension of the three years in § 507(a)(8)(A)(i) . . . [had] exactly the effect rejected by the Supreme Court in *No-*

*land*—it would alter the extent of the government's statutory priority for taxes based on an equitable principle whenever a debtor had a prior bankruptcy case during the three-year period.
*Id.* at 892. In reaching this holding, *Nolan* adopted the minority position. *See, e.g., Quenzer v. United States (In re Quenzer),* 19 F.3d 163, 165 (5th Cir.1993). However, the courts that adopt the minority approach do not follow the Ninth Circuit decision in *Brickley,* which this court must follow.

13. The bankruptcy court weighed the Code's preference for compensating actual loss claims, and subordinated the tax penalty claim to those of the general unsecured creditors. *Id.* at 537, 116 S.Ct. at 1526.

14. Section 510(c) states:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may-
(1) under the principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
(2) order that any lien securing such a subordinated claim be transferred to the estate.
11 U.S.C. § 510(c) (1994).

decision, the Sixth Circuit concluded that postpetition, nonpecuniary loss tax penalties were vulnerable to subordination by their very disposition. *Id.* at 535, 116 S.Ct. at 1524. The Supreme Court reversed, holding that "bankruptcy court[s] may not equitably subordinate claims on a categorical basis in derogation of Congress' scheme of priorities." *Id.* at 536, 116 S.Ct. at 1525. The Court specified that although § 510(c) could be applied to subordinate a tax penalty, it did not permit courts to modify the priority scheme in the Code by categorically subordinating tax penalties. *Id.* at 539, 116 S.Ct. at 1527. In other words, courts cannot use the concept of equitable subordination to reclassify a category of claims contrary to the Code because this would "run directly counter to Congress's policy judgment that a postpetition tax penalty should receive the priority of an administrative expense." *Id.* at 541, 116 S.Ct. at 1527–28; *see also Nicholas v. United States,* 384 U.S. 678, 692–95, 86 S.Ct. 1674, 1684–86, 16 L.Ed.2d 853 (1966); 11 U.S.C. §§ 503(b)(1)(C), 507(a)(1), and 726(a)(1). Therefore, the Court held that "equitable subordination must not occur at the level of a policy choice at which Congress itself operated in drafting the Bankruptcy Code." *Id.* at 541, 116 S.Ct. at 1528.

*Noland* does not overrule *West* for several reasons. First, *Noland* involved the subordination of an entire category of claims specifically assigned priority status by Congress. This act was contrary to the Code, the legislative history, and a previous Supreme Court case that endorsed priority treatment for postpetition tax penalties.[15] The Ninth Circuit's decision in *West* does not present comparable problems. *West* does not involve the restructuring of priorities under § 507. Rather, the *West* decision is consistent with the legislative intent behind Code § 108(c) and I.R.C. § 6503.

Furthermore, *West* does not rely on equity to toll the three-year period. *See, e.g., Richards,* 994 F.2d 763; *Solito v. United States,* 172 B.R. 837, 838 (Bankr.W.D.La.1994). Instead, the Ninth Circuit based its decision on a thorough analysis of the applicable Code sections, the legislative history behind the relevant sections, and Supreme Court precedent (finding that this situation was a "rare case" in which a literal application of the statute would produce a result at odds with Congress' intentions). *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989).

Lastly, unlike *Noland, West* does not contradict Congress' intent. The sole function of assigning priority to certain tax claims is to enhance the IRS' ability to collect those claims. Under § 507(a)(8)(A)(i), Congress has given the government three years for this purpose. By tolling this period during a prior bankruptcy (when the IRS is stayed from collecting) plus six months, the Ninth Circuit in *West* interpreted the applicable Code sections and I.R.C. § 6503 in a manner consistent with Congress' intent. *Noland* does not require statutes to be interpreted in a vacuum, specifically when the outcome appears to be at odds with Congressional will.

Accordingly, *Noland* does not dictate a result inconsistent with the *West* decision. The three-year period under § 507(a)(8)(A)(i) is tolled for the period of the First Case plus six months. Assuming that the extensions were invalid as Debtor contends, and that the Return was due on April 15, 1990, the 1989 Taxes fall within the three-year "look-back period" of § 507(a)(8)(A)(i). Debtor filed the First Case on August 5, 1992. At that point, 27 months and 21 days had passed from the date the Return was due (April 15, 1990). The First Case was dismissed on December 11, 1992, but the suspension on the running of the IRS's time to collect the taxes remained in effect for six months after the dismissal, or until June 11, 1993, pursuant to I.R.C. § 6503. The Second Case was filed on July 2, 1993. Including the tolling from August 5, 1992 to June 11, 1993, three years had not expired at the time of the Second Case. Therefore, Debtor's 1989 Taxes are entitled to priority status and are not dischargeable under § 523(a)(1)(A).

*B. The Extensions For Filing The Return Are Not Void.*

 The second question presented by the Motion is whether an extension that is grant-

---

**15.** *See Nicholas,* 384 U.S. at 692–95, 86 S.Ct. at 1684–86.

ed by the IRS is valid for purposes of the Code even when the taxpayer has not complied with all of the governmental regulations concerning the extension. Debtor raises this argument in conjunction with his first argument that *Noland* overrules *West.* The second argument is a necessary corollary to Debtor's contention that the 1989 Taxes fall outside the § 507(a)(8)(A)(i) three-year time period. If the extensions were invalid, the Return would have been due on April 15, 1990. As the second case was filed on July 2, 1993, the due date for the Return would fall outside the three-year time period before the Second Case was filed.

However, if the extensions were valid, the Return would have been due on October 15, 1990. Therefore, the IRS would be entitled to priority under § 507(a)(8)(A)(i) for any filing made by Debtor prior to October 15, 1993, regardless of whether *West* applies. As Debtor's Second Case was filed on July 2, 1993, the IRS would be entitled to priority status if the extensions were valid.

I.R.C. § 6081(a)[16] provides that an extension for filing a tax return may be obtained automatically if certain requirements are met.[17] Debtor argues that a failure to comply with all of these requirements renders an extension request void *ab initio,* even when the IRS grants the extension. Debtor asserts that at least two of the requirements of former Treasury regulation 1.6081–4 were not met.[18]

Defendant asserts that even if Debtor failed to comply with the provisions of former Treasury regulation 1.6081–4, the extensions are not invalidated because the IRS has the discretion to grant extensions. At the hearing on the Motion, Defendant argued that an IRS extension is considered to be a unilateral waiver of the right to assert the consequences for a taxpayer's failure to file on time. Defendant asserted that once the IRS has granted an extension, Debtor cannot void it. Moreover, Defendant claimed that if Debtor did in fact intentionally or negligently fail to comply with IRS and Treasury regulations it would be unfair to discharge the 1989 Taxes and allow Debtor to profit from his noncompliance.

Although there are not many cases pertaining to the validity of IRS extensions, the existing case law is clear. While Debtor cites *Crocker v. Commissioner,* 92 T.C. 899, 1989 WL 45940 (1989), and *Condor Intern., Inc. v. Commissioner,* 98 T.C. 203, 1992 WL 33741 (1992), *rev'd in part on other grounds,* 78 F.3d 1355 (9th Cir.1996), to support his view that a failure to comply with the requirements of Treasury Regulation 1.6081–4 renders an extension request void *ab initio,* Debtor fails to mention that in both cases the IRS, and not the taxpayer, sought to void the extensions. In *Crocker* and *Condor,* the taxpayers failed to estimate properly their taxes on their 4686 forms when they requested the automatic extensions. Although their extensions were granted, the IRS requested the courts to declare their applications void *ab initio* and to void the extensions. The court in *Crocker* stated: "Respondent [the IRS] may properly void automatic extensions of filing deadlines where the taxpayer's Form

---

16. Under I.R.C. §§ 6081(a)(1) and (2), the Secretary of the Treasury may grant a reasonable extension of time for the filing of any return required under the I.R.C.

17. Former Treasury regulation 1.6081–4 allowed an individual taxpayer a four month "automatic" extension to file his or her federal income tax return for a given year provided that the following requirements were met: 1) the application must have been on form 4868 and must have been signed by the taxpayer or a duly authorized representative; 2) the application must have been filed on or before the date prescribed for the filing of the return; 3) the application must have shown the full amount properly estimated as owing for that taxable year; and 4) the application must have been accompanied by the re-

mittance of the full amount properly estimated as owing for that taxable year.

18. Debtor claims first, that there was no bona fide reasonable estimate of the tax owed for the year 1989. This is because the transaction which generated the bulk of the income for that year was the sale of an office building. Debtor argues that the estimate of taxes reflected on form 4868 did not properly take into account the gain from the sale of that building, although Debtor had ample time to obtain the information necessary to take the sale of the building into account for purposes of the extension request. Second, Debtor asserts that even if the estimate was bona fide for purposes of the regulations, the amount of tax which appeared on the request was not in fact paid.

4868 is invalid because of failure to properly estimate tax liability." *Crocker*, 92 T.C. at 911.

Most cases that involve the voiding of IRS extensions address the question of whether the IRS may void extensions that it has granted in order to collect late filing penalties.[19] Therefore, when a taxpayer does not comply with IRS regulations in completing his or her extension requests and the IRS protests, the requests can be declared void *ab initio* and the extensions voided.

Only a few cases involve a taxpayer's request to void an extension. In *Gidley v. United States (In re Gidley)*, 138 B.R. 298 (Bankr.M.D.Fla.1992), *aff'd*, 151 B.R. 952 (M.D.Fla.1992), the IRS granted an extension and did not assess late filing fees against the taxpayer/debtor even though the taxpayer failed to remit a reasonable estimate of his taxes with the extension application. The taxpayer (who later filed bankruptcy) then attempted to void the extension making the same argument that Debtor makes here. The trial court held that because the IRS had not taken affirmative steps to deny the taxpayer's extensions, the extension was valid and the debtor could not void it. *Id.* at 300.

In *United States v. Lambrakis*, 1994 WL 544289 (E.D.N.Y. Sept.27, 1994), the taxpayer was indicted for willfully failing to file a personal income tax return. In order to have the charge dismissed as untimely, the taxpayer asserted that his original application for an automatic filing extension was a nullity because he failed to estimate properly and reasonably his tax liability. The district court rejected the taxpayer's argument stating:

> With respect to the statute of limitations in a criminal prosecution, it is not within the province of the taxpayer to make a unilateral determination of whether a bona fide estimate of tax liability was made. The defendant ... applied for and received a four month extension of time to file his

income tax return. He cannot now step forward to make the self-serving admission of a fraud in estimating his tax liability, and thereby void the automatic extension, in order to establish a statute of limitations defense to his criminal prosecution for failing to file.

*Id.* at *2. The court also found that "under IRS regulations, the application for an extension is terminable, not void, at the discretion of the IRS, not the taxpayer." *Id.* (citing 26 C.F.R. § 1.6081–4(c) (1994)).

■ The *Lambrakis* holding is persuasive. Section 1.6081–4(c) provides that the district director or the director of a service center may, "in his discretion, terminate at any time an automatic extension by mailing to the taxpayer, or the person who requested such extension, a notice of termination." 26 C.F.R. § 1.6081–4(c) (1997). The regulation reasonably infers that only the IRS has the option to declare an extension void. Furthermore, it would be inequitable to declare the extensions invalid after Debtor benefitted from them.

For the foregoing reasons, Debtor's extensions are valid for purposes of the I.R.C. and § 507(a)(8)(A)(i) of the Code. The date on which the Return was last due, including extensions, was October 15, 1990. Therefore, when Debtor filed the First Case on August 5, 1992, only 21 months and 21 days of the three-year look back period had run. At that point, the running of the period was suspended until the dismissal of the First Case, plus six months. Six months later on June 11, 1993, the three-year period began running again. Accordingly, the IRS was entitled to 14 months and 10 days (three years minus 21 months and 21 days) more to collect the past due taxes. However, Debtor filed the Second Case on July 2, 1993, only 21 days later. Therefore, the 1989 Taxes are entitled to priority status because the three-year period did not expire before the filing of the Second Case.

---

19. *See McPike v. Commissioner*, 1996 WL 55974, 71 T.C.M. (CCH) 1988 ¶ 96,046 (U.S.Tax Ct. Feb. 12, 1996); *Magowan v. Commissioner*, 1994 WL 122088, 67 T.C.M. (CCH) 2627 ¶ 94,152 (U.S.Tax Ct. Apr. 12, 1994); *Jacobs v. Commissioner*, 1994 WL 243470, 67 T.C.M (CCH) 3048 ¶ 94,252 (U.S.Tax Ct. June 6, 1994); *Pflug v. Commissioner*, 1989 WL 135779, 58 T.C.M. (CCH) 685 ¶ 89,-615 (U.S.Tax Ct. Nov. 14, 1989).

## V. CONCLUSION

This court has determined that the Supreme Court's holding in *Noland* does not repudiate the Ninth Circuit's opinion in *West.* For this reason, the three-year period set out in § 507(a)(8)(A)(i) of the Bankruptcy Code is tolled for the duration of Debtor's intervening bankruptcy plus six months. In addition, Debtor's extensions are valid for purposes of the I.R.C. and § 507(a)(8)(A) of the Bankruptcy Code. Therefore, for the foregoing reasons, the 1989 Taxes are not dischargeable.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.